UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARKEL INSURANCE COMPANY, | : | |
|     *Plaintiff*, | : | |
| | : | CASE NO. 3:15-cv-01663-VLB |
| v. | : | |
| | : | |
| EBNER CAMPS, INC., | : | August 4, 2017 |
| JOHN DOE, | : | |
|     *Defendants.* | : | |

## MEMORANDUM OF DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [DKTS. 39 & 47]

This is a declaratory judgment action brought by Markel Insurance Co. ("Markel Insurance" or "Plaintiff") seeking a declaration that its general liability insurance policy affords no coverage to Ebner Camps, Inc. ("Ebner Camps" or "Defendant") for liability it may have to a plaintiff in a civil action pending in state court brought by a former camper alleging that in 1987 he was sexually assaulted by a counselor at Camp Awosting owned by Ebner Camps. For the following reasons, the Court GRANTS summary judgment in favor of Markel Insurance.

I. Background

A. *The State Case*

In early 2015, an individual proceeding under the pseudonym John Doe initiated a civil action against Ebner Camps. *See* [Dkt. 47-1 ¶ 7 (Defs.' D. Conn. L. R. 56(a)(1) Stmt.)[1]; Dkt. 50-1 (Pl.'s D. Conn. L. R. 56(a)(2) Stmt.) ¶ 7; Dkt. 48-4 (Opp'n

---

[1] Defendant John Doe avers that he is an interested party to this action and accordingly joins Defendant Ebner Camps, Inc.'s Objection to Motion for Summary Judgment and memorandum in support thereof, *see* [Dkts. 47, 48], and "fully incorporates the arguments and exhibits set forth therein, including defendant Ebner Camps, Inc.'s Local Rule 56(a)(2) Statement of Material Facts." *See* [Dkt. 49 (Def. John Doe's Obj'n on Mot. Summ. J.) at 1].

1

Pl.'s Summ. J. Ex. D, Marshal's Return) (stating Ebner Camps was served with John Doe's complaint on Feb. 17, 2015); Dkt. 41-4 (D. Conn. L. R. 56(a)(1) Stmt. Ex. C, State Court Docket) at 3 of PDF (indicating complaint was filed on Jan. 26, 2015)].[2] The state court complaint alleges that in 1987 John Doe attended summer camp at Camp Awosting, which is owned and controlled by Ebner Camps. *See* [Dkt. 47-1 ¶¶ 9-10; Dkt. 50-1 ¶¶ 9-10]. Ebner Camps allegedly employed John Murphy as a camp counselor, and over the course of the 1987 summer he sexually assaulted and battered John Doe on numerous occasions. [Dkt. 47-1 ¶¶ 11-12; Dkt. 50-1 ¶¶ 11-12]. The state court complaint raises allegations of negligence, negligent hiring and retention, negligent supervision, breach of fiduciary duty, and negligent infliction of emotional distress against Ebner Camps, all which pertain to the alleged sexual assault and battery. *See* [Dkt. 47-1 ¶¶ 14-18; Dkt. 50-1 ¶¶ 14-18].

  B. *The Policy*

Markel Insurance issued an insurance policy to Ebner Properties, LLC with an effective date of March 1, 2014. *See* [Dkt. 47-1 ¶¶ 1-2; Dkt. 50-1 ¶¶ 1-2]. The policy period expired March 1, 2015. *See* [Dkt. 47-1 ¶ 2; Dkt. 50-1 ¶ 2]. Defendant Ebner Camps, Inc. is a named insured under the policy. [Dkt. 47-1 ¶ 6; Dkt. 50-1 ¶ 6]. The policy contained Commercial General Liability Coverage and certain endorsements including Abuse or Molestation Coverage, Miscellaneous Professional Liability Coverage Endorsement, and Punitive Damages Exclusion. [Dkt. 47-1 ¶¶ 3-5; Dkt. 50-1 ¶¶ 3-5; Dkt. 48-2 (Opp'n Pl.'s Mot. Summ. J. Ex. B (Markel

---

[2] The original complaint contained allegations against Kevin Ebner, Kristin Martin, and Kurt Ebner, but John Doe subsequently withdrew his complaint against these individuals on or about June 1, 2015. *See* Dkt. 47-1 ¶¶ 7-8; Dkt. 50-1 ¶¶ 7-8.

Policy) at EBNER000200, -0218]. The Commercial General Liability Extension of Declarations lists Camp Awosting at a premises owned, rented, or occupied by the named insured and designates the Abuse and Molestation Coverage to apply to Camp Awosting. [Dkt. 47-1 ¶ 19; Dkt. 50-1 ¶ 19; Dkt. 48-2 at -0154].

The policy contains several provisions relevant to the case at hand. First, the CGL Coverage states that Markel Insurance "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which the insurance applies" but has "no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' . . . to which this insurance does not apply." [Dkt. 48-2 at -0157]. "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *Id.* at -0167. Markel Insurance reserves a right to "at [its] discretion, [to] investigate any 'occurrence' and settle any claim or 'suit' that may result." *Id.* at -0157.

"Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at -0169. The CGL Coverage limits the application of insurance coverage to "bodily injury" if three conditions are satisfied. Those conditions are if "(1) [t]he 'bodily injury' . . . is caused by an 'occurrence' that takes place in the 'covered territory,'; (2) [t]he bodily injury' . . . occurs *during the policy period*; and (3) [p]rior to the policy period, no insured listed under Paragraph 1 of Section II – Who is an Insured and no 'employee' authorized by you to give or receive notice of an 'occurrence' or claim, knew that the 'bodily injury' . . . had occurred, in whole or in part." *Id.* at -0157

3

(emphasis added). This section explicitly states that "[v]arious provisions in this policy restrict coverage" and directs the insured to "[r]ead the entire policy carefully to determine rights, duties and what is and is not covered." *Id.*

Second, Markel Insurance added an endorsement provision titled Abuse or Molestation Coverage, which "modifies insurance provided under the [CGL Coverage]." *See id.* at -0190. This endorsement states that "the provisions of the CGL Coverage Form apply <u>unless modified by this endorsement</u>." *Id.* (emphasis added). Under the Abuse or Molestation Coverage endorsement, Markel Insurance will

> pay those sums the insured becomes legally obligated to pay as damages that result in 'bodily injury' . . . because of abuse, molestation or exploitation arising from negligent employment, training, investigation, reporting to the proper authorities, or failure to so report, or retention and supervision of a person for whom any insured is <u>or ever was legally responsible</u>. Coverage includes the actual, alleged, or threatened abuse, molestation, or exploitation by anyone of any person while in the care, custody or control of any insured.

*Id.* (emphasis added). The Abuse or Molestation Coverage endorsement also includes "mental anguish or emotional distress" as types of "bodily injury." *Id.* The endorsement, however, includes Limits of Insurance such that "[n]o coverage in this policy is provided for abuse, molestation or exploitation except as provided herein, under this endorsement." *Id.* at -0191. "Multiple incidents of abuse, molestation or exploitation involving a person which takes place over multiple policy periods for which this coverage is provided by us shall be deemed as one 'occurrence' and shall be subject to the coverage and limits in effect at the time of

the first incident." *Id.* Monetary limitations are $1,000,000 per person, per occurrence or $2,000,000 aggregate per policy period. *Id.* at -0190.

There also exists a Miscellaneous Professional Liability Coverage Endorsement that modifies certain provisions of the CGL Coverage. *See id.* at -0199. This endorsement covers damages "arising out of a covered 'wrongful act' to which this insurance applies or 'wrongful act(s)' of others for which you are liable." *Id.* The endorsement expressly states, "This insurance does not apply to: . . . (3) [l]iability resulting from any actual, threatened, or alleged abuse, molestation or sexual conduct." *Id.*

Lastly, the policy includes a Punitive Damages Exclusion endorsement, which modifies insurance provided, in relevant part, under the CGL Coverage Part. *See id.* at -0218. This endorsement states, "It is understood and agreed that coverage under this policy does not apply to punitive or exemplary damages, nor to fines, penalties or sanctions imposed by law, nor to defense costs related to any of the above." *Id.*

II. <u>Legal Standard</u>

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no genuine factual disputes exist. *See Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.* (citing

5

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH,* 446 F.3d 313, 315–16 (2d Cir. 2006) (internal quotation marks and citation omitted).

A party who opposes summary judgment "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). "At the summary judgment stage of the proceeding, [the moving party is] required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient." *Welch–Rubin v. Sandals Corp.,* No. 3:03-cv-00481, 2004 WL 2472280, at *4 (D. Conn. Oct. 20, 2004) (citing *Gottlieb*, 84 F.3d at 518); *see Martinez v. Conn. State Library*, 817 F.Supp.2d 28, 37 (D. Conn. 2011). Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726–27 (2d Cir. 2010).

III. <u>Analysis</u>

The parties dispute whether the policy at issue imposes upon Markel Insurance a duty to defend and to indemnify Ebner Camps for the allegations set

forth in the state case. In essence, Markel Insurance contends the insurance policy is an occurrence-based policy excluding conduct that happened before the policy period, such as the alleged sexual assault and battery of 1987. Ebner Camps does not dispute that the policy is occurrence-based, *see* [Dkt. 53 (Defs.' Am. Reply) at 1], but it instead posits that language from the Abuse and Molestation Coverage endorsement modified the insurance policy "to provide comprehensive and virtually timeless coverage for claims arising out of sexual abuse and molestation," [Dkt. 48 at 4]. Specifically, Ebner Camps argues that the endorsement language covering "a person for whom any insured is or ever was legally responsible" extends coverage to people no longer employed "who may have exploited or molested a person while in the care, custody or control of Ebner" and directly conflicts with the other provisions of the policy "limit[ing] coverage to occurrences within the policy period." *Id.* at 7. This disagreement boils down to one question: to what extent does the Abuse and Molestation Coverage endorsement modify the CGL Coverage?

The parties agree that Connecticut law applies to the interpretation of this insurance policy contract. *See* [Dkt. 40 (Pl.'s Mot. Summ. J.) at 5 of PDF; Dkt. 48 at 8]. The interpretation of an insurance contract is a question of law for the Court, *see Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co.*, 274 Conn. 457, 462-63 (2005), that "is to be interpreted by the same general rules that govern the construction of any written contract," *Zulick v. Patrons Mut. Ins. Co.*, 287 Conn. 367, 372-73 (2008). A court must construe the insurance contract to effectuate "the intent of the parties, that is, what coverage the . . . [insured] expected to receive

and what the [insurer] was to provide, as disclosed by the provisions of the policy . . . ." *Liberty Mutual Ins. Co. v. Lone Star Indus., Inc.*, 290 Conn. 767, 795 (2009) (quoting *Allstate Ins. Co. v. Barron*, 269 Conn. 394, 406 (2004)). Overall, policy language must be construed "as laymen would understand it and not according to the interpretation of sophisticated underwriters . . . ; the policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view." *R.T. Vanderbilt Co., Inc. v. Cont'l Cas. Co.*, 273 Conn. 448, 462 (2005) (quoting *O'Brien v. United States Fidelity Guar. Co.*, 235 Conn. 837, 843 (1996)).

Clear and unambiguous policy terms must be given their "natural and ordinary meaning," and a court "cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties." *Schultz v. Hartford Fire Ins. Co.*, 213 Conn. 696, 702-03 (1990); *Liberty Mutual*, 290 Conn. at 795-96 (requiring language "from which the intention of the parties is to be deduced" to be given the natural and ordinary meaning where the terms are unambiguous). Put another way, a court may not "torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings." *Schultz*, 213 Conn. at 703 (quoting *Downs v. Nat'l Cas. Co.*, 146 Conn. 490, 494-95 (1959)); *see Hartford Cas. Ins. Co. v. Meyers*, No. CV030519406S, 2003 WL 23177491, at *2 (Conn. Super. Ct. 2003) ("[A]mbiguity does not result from a term having multiple dictionary definitions nor because the parties differ on its meaning."). Where a term in an insurance policy is ambiguous,

8

however, such ambiguity "must be resolved in favor of the insured." *Liberty Mutual*, 290 Conn. at 796. Ambiguous terms in an insurance policy are those that are "reasonably susceptible to more than one reading." *Connecticut Med. Ins. Co. v. Kulikowski*, 286 Conn. 1, 7 (2008). This ambiguity must exist in the policy language itself and cannot derive from a party's "subjective perception of the terms." *Id.*; *Liberty Mutual*, 290 Conn. at 808 (same).

The Connecticut Supreme Court has held that an "endorsement" has been defined as both (a) "a provision added to an insurance contract altering its scope or application that takes precedence over printed portions in conflict therewith," and (b) "[a] written or printed form attached to the policy which alters provisions of the contract." *Schultz*, 213 Conn. at 703 (citing, respectively, (a) Webster's Third New Int'l Dictionary and (b) T. Green, Glossary of Ins. Terms (1980)); *see Lexington Ins. Co. v. Lexington Healthcare Grp., Inc.*, 311 Conn. 29, 55 (2014) (defining "endorsement" or "rider" as "a writing added or attached to a policy or certificate of insurance which expands or restricts its benefits or excludes certain conditions from coverage") (quoting 2 L. Russ & T. Segalla, Couch on Insurance (3d Ed. 2005) § 18:17, p. 18–24). "When properly incorporated into the policy, the policy and the rider or endorsement together constitute the contract of insurance, and are to be read together to determine the contract actually intended by the parties." *Lexington*, 311 Conn. at 55. It logically follows then that "[i]n construing an insurance policy, the court must not ignore or disregard any provision that can be reconciled with other parts of the policy nor should a court interpret a single provision or sentence in a policy and attach to it a great significance than is

9

intended by the whole terms of a policy." *Schultz*, 213 Conn. at 704. A court should also interpret the policy to give every provision operative effect where possible, as "[a] construction of an insurance policy which entirely neutralizes one provision should not be adopted if the contract is susceptible of another construction which gives effect to all of its provisions and is consistent with the general intent." *Lexington*, 311 Conn. at 57 (quoting *R.T. Vanderbilt*, 273 Conn. at 469). By like measure, "[t]o the extent that an interpretation makes another term or provision meaningless, that interpretation should be rejected in favor of an interpretation that preserves meaning." *Id.* (quoting 1 J. Thomas & F. Mootz, New Appleman on Ins. Law (Library Ed. 2011) § 5.03[1], p. 5-31). That being said, where there exists an "irreconcilable conflict" between language from the policy and the endorsement, then the latter controls. *Schultz*, 213 Conn. at 705.

As aforementioned, the CGL Coverage provides Markel Insurance "the right and duty to defend the insured against any 'suit' seeking . . . damages [for 'bodily injury']." See [Dkt. 48-2 at -0157]. The Abuse and Molestation Coverage endorsement covers damages for "bodily injury" resulting specifically from abuse, molestation and exploitation. *Id.* at -0190. The endorsement "modifies insurance provided under the [CGL Coverage] but explicitly acknowledges that the CGL Coverage provisions "apply unless modified by this endorsement." *Id.* A "modification" is defined as "[a] change to something; an alteration" or "[a] qualification or limitation of something." *Modification*, Black's Law Dictionary, (10th ed. 2014). These definitions indicate that language from the endorsement is inextricably linked to the associated language of the insurance policy. There also

exists language directly preceding the content of the endorsement, which states as follows: "In consideration of the premium charged, the following is *added* to Section I, Coverage A." [Dkt. 48-2 at -0190 (thereafter listing the content)]. The content of the endorsement then appears within an outline matching the sections and subsections of the CGL Coverage. In considering the endorsement's format, the "modification" definition, and the overarching contract construction principles in mind, the Court finds that any provision from the CGL Coverage that does not "irreconcilably conflict" with the Abuse and Molestation Coverage endorsement provisions applies coextensively to the legal obligations to pay damages for abuse, molestation or exploitation. *See Schultz*, 213 Conn. at 705 (stating that endorsement language controls over policy language where there is an "irreconcilable conflict" between the provisions).

Some Abuse and Molestation Coverage language clearly modifies the associated CGL Coverage provisions. For instance, the endorsement clearly and unambiguously modifies the definition of "bodily injury" to "include[ ] mental anguish or emotional distress." *Id.* The relevant definition of "include" is "to take in or have as part of a whole," *see Include*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/include?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (last visited Aug. 2, 2017), and accordingly the Court construes the endorsement to expand the definition of "bodily injury" as defined under the CGL Coverage: "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time," *id.* at -0167. The endorsement also

explicitly limits coverage in that "[n]o coverage in this policy is provided for abuse, molestation or exploitation except as provided herein, under this endorsement." *Id.* at -0191.[3]

Notably, the Abuse and Molestation Coverage endorsement covers any legal obligation to pay damages "because of abuse, molestation or exploitation arising from negligent employment, training, investigation, reporting to the proper authorities, or failure to so report, or retention and supervision of a person for whom <u>any insured is or ever was legally responsible</u>." *Id.* at -0190. This language marks the center of the parties' dispute. Although Ebner Camps argues that this phrase "conflicts directly with the commercial general liability coverage provisions that limit coverage to occurrences within the policy period," *see* [Dkt. 48 at 7], Markel Insurance posits that such language does not conflict and must still comport with the requirements for CGL Coverage to apply: "(1) [t]he 'bodily injury' . . . is caused by an 'occurrence' that takes place in the 'covered territory,'; (2) [t]he bodily injury' . . . occurs during the policy period; and (3) [p]rior to the policy period, no insured listed under Paragraph 1 of Section II – Who is an Insured and no 'employee' authorized by you to give or receive notice of an 'occurrence' or claim, knew that the 'bodily injury' . . . had occurred, in whole or in part." [Dkt. 48-2 at -0157].

---

[3] Markel Insurance presents an alternative argument that the Miscellaneous Professional Liability Coverage endorsement excludes coverage for sexual acts as the endorsement explicitly excludes coverage for "[l]iability resulting from any actual, threatened, or alleged abuse, molestation or sexual conduct." *See* [Dkt. 40 at 15-16 of PDF]. Ebner Camps does not dispute this contention, and the above presented language further indicates that where abuse or molestation is at issue then the Abuse and Molestation Coverage endorsement controls.

12

**The Court finds that a natural and ordinary reading of this language is that coverage of "a person for whom any insured is or ever was legally responsible" defines *who* is insured but nothing more. As aforementioned, a court is to interpret the policy and endorsement together, *Lexington*, 311 Conn. at 55, but should not give certain provisions, sentences, or even phrases a "greater significance than is intended by the whole terms of the policy," *Schultz*, 213 Conn. at 704. Ebner Camps argues that "[t]his language specifically extends coverage for present employees and past employees for an unlimited amount of time." [Dkt. 48 at 7]. This interpretation does not conflict with the fact that the "bodily injury" must still occur *during the policy period*. In other words, so long as the conduct occurred in the covered territory during the policy period and specified individuals did not know of the occurrence prior to the policy period, it is irrelevant that the individual allegedly inflicting the bodily injury is currently or formerly employed because both are covered under this endorsement. To interpret the phrase as Ebner Camps advocates would require the Court to override the CGL Coverage that is limited to occurrences within the policy period, and this construction would "entirely neutralize one provision" where there is otherwise the "susceptib[ility] of another construction which gives effect to all of its provisions and is consistent with the general intent." See *Lexington*, 311 Conn. at 57. Indeed, the Court would have to expand the phrase from *who* is insured to also include *when* the insurance can be**

invoked. This is in clear contravention of Connecticut's principles of contract interpretation.[4]

A reading of the contract as a whole supports a conclusion that it is the "general intent" for the occurrence-based limitations to remain intact. The CGL Coverage Part Declarations includes a Retroactive Date section, which states, "Coverage A of this Insurance does not apply to 'bodily injury' . . . which occurs before the Retroactive Date, if any, shown here:  none  ." [Dkt. 48-2 at -0153]. This language supports the conclusion that coverage under this policy is not intended to extend beyond the policy period. The parties could have made coverage retroactive but chose not to do so. Neither the parties nor the Court have identified any other evidence in the policy indicating the parties wanted coverage for abuse and molestation to reach beyond the policy period that otherwise applies to all other types of occurrences. To the extent Ebner Camps believes the

---

[4] The Court also notes that the phrase, "is or ever was legally responsible," appears to be boilerplate language in many abuse and molestation endorsements. After conducting a broad search of the instant phrase and the endorsement subject matter, the Court identified nearly 60 state and federal cases nationwide and found that very few discussed the meaning of the phrase; where the phrase was discussed, it typically involved the scope of *who* was covered under the language. *See, e.g., Logan Bus Co., Inc. v. Discover Prop. & Cas. Ins. Co.*, No. 24525/09, 2012 WL 4477286, at *3 (N.Y. Sup. Sept. 28, 2012) (determining that "'legally responsible' refers only to its employee or worker," and not to a student); *QBE Ins. Corp. v. Walters*, 148 A. 3d 785, 791 (Pa. Super. Ct. 2016) (holding that where "the exclusion explicitly encompasses the negligent employment, investigation, supervision, training, and retention of 'a person for whom any insured <u>is or ever was legally responsible</u> and whose conduct is described' as 'actual or threatened assault or battery whether caused by or at the instigation of any insured, his employees, patrons or any other persons,'" negligent conduct of an insured or its employees is excluded) (emphasis added). It is notable that in not a single case did any party interpret the phrase to mean coverage should be afforded beyond the policy period.

14

occurrence-based language is knocked out by the endorsement, the Court acknowledges that where there exists a conflict between the policy and the endorsement, the latter prevails, *see Schultz*, 213 Conn. at 705, but finds that no conflict exists to warrant the application of this rule. Moreover, the endorsement itself contains the following limit of insurance: "Multiple incidents of abuse, molestation or exploitation involving a person which takes place over *multiple policy periods* for which this coverage is *provided by us* shall be deemed as one '*occurrence*' and shall be subject to the coverage and limits in effect at the time of the first incident." *Id.* at -0191 (emphasis added). Indeed, were the Court to disregard the existence of the italicized language that exists in the endorsement itself, it would be doing so in contravention of clear legal principles. *See Lexington*, 311 Conn. at 56-57 ("To the extent that an interpretation makes another term or provision meaningless, that interpretation should be rejected in favor of an interpretation that preserves meaning.").

Markel Insurance has also identified several Connecticut state regulations establishing standards for claims-made policies. *See* [Dkt. 40-4 (Def.'s Mot. Summ. J. Ex. 4, Applicable Regulations)]. Under Regs. Conn. State Agencies § 38a-327-3, a claims-made policy must comply with a long list of minimum standards. *See id.* at 4 of PDF. Ebner Camps agrees that this policy is an occurrence-based policy, not a claims-made policy, but nonetheless argues that the Abuse and Molestation Coverage endorsement modifies the CGL Coverage. *See* [Dkt. 53 at 1]. Ebner Camps also posits that an insured is not required to evaluate the policy's compliance with state regulations. *See* [Dkt. 48 at 11]. Notwithstanding Ebner

15

Camps's contentions, the Court agrees with Markel Insurance that the modification would effectively turn this endorsement into a claims-made provision. That Connecticut regulations severely restrict the use of claims-made policies is additional evidence against Ebner Camps' construction and, if nothing else, suggests the construction may not be feasible for practical regulatory reasons. Certainly in this circumstance "the policyholder's expectations should be protected" because a reasonable layperson would construe a policy in a way that would facilitate regulatory compliance should it be applicable. *R.T. Vanderbilt Co., Inc.*, 273 Conn. at 463.

IV. <u>Conclusion</u>

Accordingly, the Court hereby GRANTS summary judgment in favor of Plaintiff Markel Insurance. The Court enters a declaratory judgment that Markel Insurance has no duty under the policy to defend or indemnify Ebner Camps as to the allegations set forth in John Doe's state court complaint in Litchfield Superior Court, *Doe v. Ebner Camps, Inc., et al.*, docket number CV 15-5007564-S.

**IT IS SO ORDERED.**

                                                /s/
                                      Vanessa L. Bryant
                                      United States District Judge

**Dated at Hartford, Connecticut: August 4, 2017**